# IN THE UNITED STATES DISTRICT COURT FOR
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DOUGLASS BOLDEN, II, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:17-cv-00741 |
| LOWES HOME CENTERS, LLC, | ) JUDGE CAMPBELL |
| | ) MAGISTRATE JUDGE BROWN |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. Nos. 25, 26). Plaintiff filed a response in opposition (Doc. No. 29), and Defendant has replied. (Doc. No. 34). The Court allowed Plaintiff to conduct additional limited discovery (Doc. No. 49) and allowed both parties submit supplemental briefs (Doc. No. 54). Plaintiff filed a supplemental response in opposition to Defendant's summary judgment (Doc. No. 58) and Defendant filed a supplemental response. (Doc. No. 67).[1] For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED**. Also pending before the Court is Defendant's Motion to Strike (Doc. No. 40) and Plaintiff's Response in Opposition (Doc. No. 44). The Court **DENIES** as moot Defendant's Motion to Strike.

---

[1] Both parties also filed numerous Statements of Undisputed Facts and Responses to Statement of Undisputed Facts. *See* Doc. Nos. 31, 35, 36, 59, 60, 68, 69.

# I. FACTUAL BACKGROUND[2]

Lowes Home Centers ("Defendant" or "Lowes") hired Douglass Bolden, II ("Plaintiff") in August 2003, as a driver in Lowes delivery department at the Madison, Tennessee location. (Pl. Depo. at 12, 63; Doc. No. 28-1). Plaintiff, a Seventh Day Adventist, informed Lowes he would be unavailable for work from sundown on Friday to sundown on Saturday in observance of the Sabbath, in accordance with his religious beliefs. (*Id.* at 34). Lowes accommodated Plaintiff's religion by scheduling him to work only on days and times that were consistent with his religious beliefs throughout his employment at the Madison, Tennessee location. (*Id.* at 34, 81, 84). In 2005, Plaintiff and his wife divorced, and Plaintiff requested a transfer to the Dickson, Tennessee store. (*Id.* at 11-13; Ex. 1). Lowes granted Plaintiff's request, and Plaintiff became a driver in the Dickson store's delivery department. (*Id.* at 12-13). Lowes continued to accommodate Plaintiff's religious beliefs by not scheduling him to work on Saturdays. (*Id.* at 45-46, 91).

In 2014, Lowes hired a new Store Manager, Nick Green ("Mr. Green"), to improve the store's business performance. (Green Decl. ¶ 11, Doc. No. 28-2). After Plaintiff transferred to the Dickson, Tennessee location, Lowes implemented a Scheduling Matrix System, in which full-time employees were not given a set schedule but instead were given two days off each week, and the off-days rotated over a four-week period. (*Id.* ¶ 6-8). Lowes hoped to staff each department so every full-time employee had at least one weekend off every four weeks. (*Id.*). After the implementation of the Scheduling Matrix, Plaintiff requested to be scheduled off from work every other Sunday based on court-ordered visitation he had with his minor daughter on Sundays. (Pl.

---

[2] Plaintiff attempts to dispute a majority of Defendant's undisputed facts. *See* Doc. Nos. 31, 35, 36. However, a majority of Plaintiff's lengthy responses do not comply with Local Rule 56.01 or Fed. R. Civ. P. Rule 56, contain argument, and are not supported by the record. Therefore, the Court will cite to Plaintiff's deposition testimony and exhibits, declarations, and the few undisputed facts.

Depo. at 80-81). Lowes granted Plaintiff's schedule request, which resulted in Plaintiff receiving a unique schedule because he had both Saturday and Sunday off every other weekend. (Green. Decl. ¶9).

On January 12, 2015, Assistant Store Manager, Scotty Gunkle ("Mr. Gunkle"), met with Plaintiff to conduct an annual Career Development Review. (Pl. Depo. at 232 & Ex. 22). On his form, Plaintiff responded he had little interest in a job change, but was also interested in exploring the training required for a promotion. (*Id.* at 185-187 & Ex. 22). However, Plaintiff never applied for a promotion because he believed his unavailability to work on Saturdays would prevent him from being selected. (*Id.* at 64-67, 76).

After Mr. Green became store manager, Plaintiff's supervisor, Chris Vickery ("Mr. Vickery"), noticed issues with Plaintiff's job performance and reported his concerns to the Human Resources Manager. (Green Decl. ¶ 14). On February 13, 2015, Lowes issued Plaintiff a warning for poor job performance. (Pl. Depo. Ex. 9). Later in 2015, the delivery department was short-staffed and several delivery drivers were being rescheduled to work on their typical weekend off based on the changed staffing needs. (Green Decl. ¶ 17). Mr. Green met with Plaintiff to request he work on Saturdays to help out, but Plaintiff expressed he was unwilling to work on Saturdays based on his religious beliefs (*Id.*; Pl. Depo. at 57-60). The Human Resources Manager then informed Plaintiff that Lowes was not going to be able to use him in the delivery department going forward. (Pl. Depo. at 58, 61-62). However, instead of transferring Plaintiff, the Assistant Store Manager, David Owens ("Mr. Owens")[3] noticed Plaintiff was getting two complete weekends off—both Saturday and Sunday—on his four-week rotation, not just every Saturday, and all other

---

[3] Mr. Owens was hired at the Dickson store in August 2015. (Owens. Decl. ¶¶ 6-7, Doc No. 28-3).

drivers were working every weekend based on staffing needs. (Owens Decl. ¶¶ 4-5). Mr. Owens was informed by the HR Manager that Plaintiff was entitled to receive every Saturday off based on his religion but was not required to grant Plaintiff's request to be off every other Sunday. (*Id.* ¶¶ 6-7). Mr. Owens revised Plaintiff's Scheduling Matrix to give Plaintiff every Saturday off and only one full weekend off during the four-week rotation. (*Id.* ¶ 8). On November 13, 2015, Plaintiff complained to Angelie Rodriquez, the Human Resources Manager, that he believed Mr. Owens changed his Scheduling Matrix in retaliation for his refusal to work on Saturdays. (Pl. Depo. at 94-97 & Ex. 8). Lowes explained that was not the case, but rather his schedule was changed only as the result of the changed staffing needs and was changed only as to Sundays, not as to Saturdays. (*Id.* at 112; Owens Decl. ¶ 9). Plaintiff continued to work without incident and had every Saturday off from work. (Pl. Depo. at 45-46, 91).

On July 4, 2016, Plaintiff injured his ankle at work and was given time off. (*Id.* at 119, 121-122). Human Resources Manager, Holly Seay ("Ms. Seay") initiated Plaintiff's workers' compensation claim, and Plaintiff returned to work on July 12, 2016, with restrictions from lifting over 25 pounds, squatting, kneeling and climbing stairs. (Seay Decl. ¶ 5-6, Doc. No. 28-4). Lowes offered, and Plaintiff accepted, a temporary light duty position at the customer service desk answering the telephone and performing cashier duties. (*Id.* ¶ 7; Pl. Depo. at 122). On September 1, 2016, Plaintiff provided Lowes with an updated doctor's note after Plaintiff reinjured his ankle while on vacation that required Plaintiff to work in a position that allowed him to stay off his feet with his foot elevated. (Seay Decl. ¶ 8). Lowes kept Plaintiff with the same temporary light duty position. (*Id.* ¶ 9). On October, 7, 2016, Plaintiff's workers' compensation claim was denied, but Lowes kept Plaintiff at the same light duty position. (*Id.* ¶ 10). On October 14, 2016, Plaintiff submitted an Accommodation Request Assessment Form, which was completed by Plaintiff's

physician. (Pl. Depo. at 129 & Ex. 10). Plaintiff's physician stated that Plaintiff needed to be accommodated with a sedentary position as much as possible. (*Id.*). Lowes does not have any sedentary positions, and decided to place Plaintiff on a leave of absence based on Plaintiff's requested restrictions. (Seay Decl. ¶ 12; Pl. Depo. at 134 & Ex. 11). During his leave of absence, Plaintiff submitted a request for FMLA leave and supported that request with certification paperwork from his physician confirming Plaintiff would be incapacitated from work for a continuous period from July 1, 2016 through April 17, 2017. (Pl. Depo. at 148 & Ex. 13). Plaintiff was granted 12-weeks of continuous leave and returned to work on March 16, 2017, when he was cleared to return to work by his physician with restrictions that permitted him to lift less than 5-10 pounds and engage in limited bending and squatting. (Pl. Depo. at 147 & Ex. 12). Lowes placed Plaintiff to work as a cashier. (Pl. Depo. Ex. 15).

On June 26, 2017, Plaintiff was operating a cash register when a shoplifter walked out of the store with stolen merchandise. (Pl. Depo. at 164-166, 172 & Ex. 18). In accordance with Lowes Recover Merchandise Without Detention and Deter Shoplifters policy ("RWD policy")[4], Plaintiff addressed the shoplifter to verify whether he had a receipt. (*Id.*). The shoplifter ignored him and continued to leave the store. (*Id.*). Plaintiff stated there were no managers or head cashiers present and designated himself as "acting management" and went outside to get the shoplifter's license plate number. (*Id.* at 166-168 & Ex. 18). The shoplifter did not get into a car, but fled Lowes property on foot to a neighboring field where he was detained by three customers who were in the parking lot at the time of the incident. (*Id.* at 168-170 & Ex. 18). Plaintiff then walked over to the field to give testimony to the police. (Pl. Depo. Ex. 18). Lowes conducted an investigation into

---

[4] Lowes RWD Policy states, "never attempt to pursue or detain a customer. Only a certified LPSS/LPSM is allowed to make detentions." (Pl. Depo. Ex. 19).

Plaintiff's conduct of following a shoplifter out of the front door. (Seay Decl. ¶ 19). Lowes determined Plaintiff abandoned his active register and pursued the shoplifter outside the store in violation of RWD Policy and Lowes Rules of Conduct. (*Id.* ¶ 20; Pl. Depo. Ex. 19). Based on this information, Lowes terminated Plaintiff on July 10, 2017. (Pl. Depo. at 156 & Ex. 16).

Plaintiff alleges religious discrimination and claims Lowes failed to accommodate his religion. (Doc. No. 1). Plaintiff also alleges Lowes failed to accommodate his disability and discriminated against him based on his disability when Lowes terminated his employment. (*Id.*). Plaintiff asserts Lowes interfered with his FMLA rights, and that Lowes violated Tennessee common law through an unlawful retaliation for his filing a worker's compensation claim. (*Id.*). Plaintiff finally alleges that Lowes' conduct constituted intentional inflection of emotional distress. (*Id.*). On March 3, 2018, Defendant filed a Motion for Summary Judgment and Plaintiff responded in opposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, courts view the facts in the light most favorable for the nonmoving party, and draw all reasonable inferences in favor of the nonmoving

party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

Plaintiff fails to address Defendant's arguments related to failure to accommodate his religious belief in violation of Title VII and the Tennessee Human Rights Act ("THRA)", FMLA interference, workers' compensation retaliation, intentional inflection of emotional distress, and disability discrimination. Therefore, the Court will **GRANT** Defendant's motion for summary judgment on those claims.[5] The Court will limits its summary judgment analysis to Plaintiff's claims of failure to promote under Title VII and the THRA, failure to accommodate under the ADA and TDA, and religious discrimination under Title VII and THRA.

### A. FAILURE TO PROMOTE IN VIOLATION OF TITLE VII AND THE TENNESSEE HUMAN RIGHTS ACT

Plaintiff argues Lowes failed to promote him because of his honor of the Sabbath. (Doc. No. 30 at 10). Defendant responds that tis claim fails because Plaintiff never formally applied for a manager position. (Doc. No. 26 at 17).

---

[5] *See Carrigan v. Arthur J. Gallagher Risk Management Services, Inc.*, 870 F. Supp. 2d 542, 550 (M.D. Tenn. 2012) (holding that plaintiff abandoned certain claims asserted in his complaint by failing to defend them in his response to defendant's motion for summary judgment).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012) (citing 42 U.S.C. § 2000e–2(a)(1)). The THRA does so as well. *See* Tenn. Code Ann. § 4–21–401(a)(1); *see also Bailey v. USF Holland, Inc.,* 526 F.3d 880, 885 n. 1 (6th Cir. 2008) ("The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims."). "To establish a claim based on failure to promote, Plaintiff must show: (1) []he was a member of a protected class; (2) []he applied and was qualified for a promotion; (3) []he was considered for and denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time Plaintiff's request for the promotion was denied." *Day v. Krystal Co.*, 471 F. Supp. 2d 874, 889 (E.D. Tenn. 2007) (citing *White v. Columbus Metro. Hous. Auth.,* 429 F.3d 232, 240 (6th Cir. 2005)); *see also Nguyen v. City of Cleveland,* 229 F.3d 559, 562–63 (6th Cir. 2000).

In some instances, a plaintiff can establish a prima facie case even if he did not formally apply for the promotion. *See Wanger v. G.A. Gray Co.,* 872 F.2d 142, 145 (6th Cir. 1989) ("Because an employer may create an atmosphere in which employees understand that their applying for certain positions is fruitless, even non-applicants can in appropriate circumstances qualify for relief ...."); *see also Nguyen,* 229 F.3d at 563–64; *Johnson v. Cargill, Inc.*, 932 F. Supp. 2d 872, 887 (W.D. Tenn. 2013). If an employer filled the position "in question without asking for applications or posting the opening so that employees could apply for the position, then the application requirement is loosened somewhat." *Id.* at 146. In this situation, "the plaintiff can establish the application element of a prima facie case by showing that, had he known of an. . .

8

opening, he would have applied." *Wanger,* 872 F.2d at 146 (quoting *Box v. A & P Tea Co.,* 772 F.2d 1372, 1377 (7th Cir. 1985). To prove he would have applied for the position, plaintiff must establish he had shown more than a general interest in the position. *Id.*

Plaintiff argues Lowes failed to promote him because he did not work on Saturdays. (Doc. No. 30 at 11). During two career development evaluations, Plaintiff states "he is interested in exploring training for a necessary promotion" and also wanted a position that would accommodate his Sabbath. (*Id.*). Plaintiff further argues he and Manager Gunkel discussed management positions in 2015, and Manager Gunkel agreed with Plaintiff that he could not be manager because of his religious beliefs. (*Id.*). Plaintiff asserts that he did not fill out the paperwork because Lowes would not accommodate his Sabbath. (*Id.* at 12). Finally, Plaintiff argues promotions were made by word of mouth and he had obtained promotions without applying, such as his promotion to delivery in 2008. (*Id.*).

Defendant argues Plaintiff was not entitled to a promotion because he did not comply with Lowes policy and actually apply for a manager position. (Doc. No. 26 at 17; Green Decl. ¶ 13). Defendant states that Lowes was not required to consider him for promotion opportunities based on his verbal expressions or interests, but Plaintiff had to submit an application; Plaintiff never did. (Doc. No. 26 at 17). While Lowes allows for verbal transfer requests to lateral, non-management positions, an application process is required for promotions to management positions. (*Id.*). Defendant further argues Plaintiff cannot identify a similarly-situated employee who was promoted to a management position without completing an application. (*Id.*).

Here, Plaintiff has not met his burden for failure to promote under Title VII and the THRA. Plaintiff admits he did not apply for a manager position at Lowe. (Pl. Depo. at 66-67).[6] Nor has Plaintiff established an exception to the application requirement. *See Johnson v. Cargill, Inc.*, 932 F. Supp. 2d 872, 887 (W.D. Tenn. 2013). Plaintiff provides no facts that Defendant did not post management job openings, nor does Plaintiff provide facts to dispute Defendant's ordinary procedure for completing an application for management positions. Plaintiff contends he did not apply for a manager position because he could not work on Saturdays, and Manager Gunkel allegedly told him as much. (Pl. Depo. at 67). But, Plaintiff never asked Defendant about specific manager positions, and only filled out a Career Development Review form indicating he was satisfied with his job, had little interest in a job change, but was also interested in exploring the training required for a promotion. (Pl. Depo. at 74, 185-187 & Ex. 22). At most, Plaintiff expressed only a general interest in a management position at Lowes; this is not enough to meet the application requirement. *See Day v. Krystal Co.,* 471 F.Supp.2d 874, 890 (E.D. Tenn. 2007) (granting summary judgment to the defendant where the plaintiff expressed only a general interest in open position). Plaintiff has not met the *prima facie* burden for failure to promote under Title VII or the THRA. *See Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 576 (6th Cir. 2004) (stating failure to apply for a promotion may be excused but "the circumstances must reveal overwhelming evidence of pervasive discrimination in all aspects of [the employer's] internal employment practices, and [that] ... any application would have been futile and perhaps

---

[6] Plaintiff expressed interest in lateral positions in the Madison, Tennessee Lowes store before transferring to the Dickson store. (Pl. Depo. at 71). Lowes transferred Plaintiff to different departments during his time at the Madison store and Lowes did not require Plaintiff to fill out applications to support these requests. (*Id*. at 71-72). These transfers were lateral moves within various non-management customer service positions. (*Id.*).

foolhardy."). The Court, therefore, **GRANTS** Defendant's motion for summary judgment on Plaintiff's claim of failure to promote.

### B. FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF AMERICANS WITH DISABILITIES ACT AND TENNESSEE DISABILITY ACT

Defendant argues it is entitled to summary judgment on Plaintiff's ADA failure-to-accommodate claim. Title I of the ADA and the TDA prohibit covered employers from discriminating against a "qualified individual on the basis of disability with regard to hiring, advancement, training, termination, and other terms, conditions and privileges of employment."[7] 42 U.S.C. § 12112(a), Tenn. Code Ann. § 8-50-103(b).

To establish a *prima facie* failure-to-accommodate claim, a plaintiff must show: (1) he is disabled under the ADA; (2) he is otherwise qualified for the position, with or without a reasonable accommodation; (3) his employer knew or had reason to know of his disability; (4) he requested a reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation. *Cotuna v. Wal-Mart Stores, Inc.*, 2017 WL 5171247, at *2 (6th Cir. 2017). The employee bears the burden of requesting a reasonable accommodation and showing the accommodation is objectively reasonable. *Aldini v. Kroger Co. of Michigan*, 628 Fed. Appx. 347, 350 (6th Cir. 2015); *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 870 (6th Cir. 2007). "Importantly, an employee cannot force h[is] employer to provide a specific accommodation if the employer offers another reasonable accommodation." *Hedrick v. W. Reserve Care Sys. & Forum Health,* 355 F.3d 444, 457 (6th Cir. 2004). "If an employee rejects a reasonable accommodation, the individual is no longer considered a 'qualified individual with a disability.'" *Id.*

---

[7] "A claim brought under the THA [Tennessee Handicap Act, now known as the TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act." *Cardenas–Meade v. Pfizer, Inc.*, 510 Fed. Appx. 367, 369 n 2 (6th Cir. 2013) (quoting *Sasser v. Quebecor Printing (USA) Corp.*, 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004)).

Defendant argues that Plaintiff complains about Lowes transitioning him from one effective accommodation—a light duty job working the cash register in customer service—to another effective accommodation—a leave of absence. (Doc. No. 26 at 22). In October 2016, after Plaintiff reinjured his ankle, Plaintiff's physician completed accommodation paperwork and advised Defendant that Plaintiff should be sedentary as much as possible. (*Id.* at 22). This meant Plaintiff was restricted from squatting, kneeling, crawling, and climbing. (*Id.*). Defendant argues that because of the severe restrictions placed on Plaintiff, Lowes could no longer safely accommodate Plaintiff at the cash register and instead placed him on leave from July 2016 through April 2017. (*Id.* at 23). Defendant asserts that allowing Plaintiff to remain in the cashier/telephone operator position would require Plaintiff to work in excess of his medical restrictions, and would not allow Plaintiff to remain sedentary. (*Id.*). Defendant argues Lowes could no longer accommodate Plaintiff and instead placed him on unpaid leave of absence. (*Id.* at 22).

Plaintiff attempts to argue Lowes should have kept him in his accommodation in customer service and as a cashier instead of placing him on unpaid leave. (Doc. No. 30 at 13). Plaintiff states that because he was working within his restriction, the cashier job was available, and the cashiers needed him, Lowes should have kept him as a cashier. (*Id.*). Plaintiff alleges the only reason he was sent on unpaid leave was because the human resources manager did not want to pay Plaintiff to stay at home. (*Id.*).

The Sixth Circuit has held medical leave may constitute a reasonable accommodation under the ADA. *See Hankins v. The Gap, Inc.,* 84 F.3d 797, 801 (6th Cir. 1996); *Cehrs v. New Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998). Plaintiff must show he was able to perform a sedentary position with or without a reasonable accommodation. *See Breitfelder v. Leis*, 2005 WL 2470996, at *1 (6th Cir. 2005). According to the undisputed facts, Plaintiff's

physician submitted an Accommodation Request Assessment Form stating Plaintiff needed a "sedentary position" and was restricted from carrying, pushing or pulling any weight whatsoever, squatting or kneeling whatsoever, and can only bend/stoop occasionally. (Doc. No. 31 ¶ 21; Pl. Depo. at 129 & Ex. 10). Plaintiff's job as a cashier required workers to pick up merchandise, which Plaintiff's physician restricted. (Doc. No. 31 ¶ 22). Here, Plaintiff provides no facts to show he could perform the functions of a cashier with a reasonable accommodation, nor did Plaintiff propose another reasonable accommodation. *See Breitfelder*, 2005 WL 2470996, at *5-6. Instead, Plaintiff accepted the unpaid leave of absence from October 14, 2016, until March 16, 2017. (Doc. No. 35 ¶¶ 23-26).[8] Accordingly, the Court finds Plaintiff fails to make his *prima facie* case of failure-to-accommodate under the ADA and **GRANTS** Defendant's motion for summary judgment.

## C. RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII AND THE THRA[9]

To assert a successful claim of religious discrimination under Title VII and the THRA,[10] a plaintiff must present either direct evidence[11] of discrimination or a prima facie case of

---

[8] The Court also notes Plaintiff filed FMLA paperwork in which Plaintiff's physician confirms Plaintiff would be incapacitated from work from July 1, 2016 through April 17, 2017. *See* Doc. No. 35 ¶ 24; Pl. Depo. Ex. 13.

[9] As a preliminary matter, Plaintiff presents several undeveloped, conflicting, and confusing arguments. It is not the Court's job to sift through numerous filings and guess a party's precise position or to develop a legal analysis that may lend support to that position.

[10] "The stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws." *Campbell v. Fla. Steel Corp.,* 919 S.W.2d 26, 31 (Tenn. 1996). Thus, the analysis under the THRA and Title VII is the same. *Id.*

[11] Plaintiff admits he did not have to work on Saturdays, and was not subjected to any discipline for not working on Saturdays, therefore Plaintiff must rely on indirect evidence to establish his religious discrimination claim.

13

indirect discrimination. *Tepper v. Potter,* 505 F.3d 508, 515 (6th Cir. 2007). To establish a prima facie case of indirect discrimination a plaintiff must show: (1) he was a member of a protected class; (2) he experienced an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees. *Id.* Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Hall v. Baptist Mem'l Health Care Corp.*, 27 F. Supp. 2d 1029, 1037 (W.D. Tenn. 1998) (citing *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995)). The plaintiff then must demonstrate that the defendant's stated reason for termination was prextual. *See Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994) ("Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'") (quoting *Tx. Dep't Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

Plaintiff and Defendant put forth numerous arguments regarding religious discrimination, but the Court will begin with only addressing the arguments that relate to Plaintiff's *prima facie* case.[12] First, Plaintiff is a member of a protected class: Seventh Day Adventist. (Doc. No. 59 ¶ 1). Second, the undisputed facts show Plaintiff experienced adverse employment action when he was terminated on July 10, 2017.[13] (Pl. Depo. at 156 & Ex. 16). Third, neither party disputes Plaintiff

---

[12] Plaintiff incorrectly cites the *prima facie* elements for failure to accommodate religion under Title VII, instead of the elements for religious discrimination. (Doc. No. 30 at 2).

[13] Plaintiff argues he was subjected to additional adverse employment action such as Defendant, (1) threatening to fire him if he did not work on Saturdays, (2) soliciting employees to come up with reasons to discipline Plaintiff after he refused to work on Saturdays, (3) changing Plaintiff's schedule, and (4) not promoting Plaintiff. First, the Sixth Circuit has held, "a threat to discharge is

was qualified for his position at the cash register. (Doc. No. 35 ¶ 26). Finally, neither party addresses whether Plaintiff was replaced by someone outside his protected class. Therefore, the Court must determine whether Plaintiff was treated differently than similarly-situated employees concerning his termination.[14]

"It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly-situated *in all respects.*" *Stotts v. Memphis Fire Dep't,* 858 F.2d 289 (6th Cir. 1988). Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citing *Mazzella v. RCA Global Commc'n, Inc.,* 642 F. Supp. 1531 (S.D.N.Y. 1986)). Plaintiff compares his conduct to the conduct of four other Lowes employees—Former Lowes employee Ms. Hornsby, Former Lowes Cashiers Ms. Stewart and Ms.

---

not an adverse employment action." *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Second, the evidence shows Plaintiff only had one write-up that did not adversely affect the conditions of his employment. *See Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 823 (finding a write-up does not constitute an adverse employment action because plaintiff's wages were not impacted). Third, Plaintiff's schedule still allowed him to have Saturdays off and also did not negatively change the terms or conditions of his employment because Plaintiff still received the same hours of work at the same rate of pay. *See Blake v. Potter*, 247 Fed. Appx. 673, 675 (6th Cir. 2007) (finding no adverse employment action when defendant denied plaintiff's discretionary schedule changes because it is not comparable to termination or a decrease in wage or salary). Fourth, as discussed above, *supra* Part III.A, Plaintiff never applied for a promotion.

[14] While not clear from Plaintiff's Response, the Court understands Plaintiff to argue that Defendant's reason for terminating Plaintiff was pretext for religious discrimination without providing evidence of all the *prima facie* elements. (Doc. No. 30 at 7-10). However, after reading Plaintiff's supplemental brief, the Court recognizes that Plaintiff presents an argument for "similarly-situated" and will apply this argument to the *prima facie* stage of the case. (*See* Doc. No. 58 at 8).

Shields, and current Lowes Customer Service Associate, Mr. Brand. (Doc. No. 58 at 8, Doc. No. 68 at 9).

First, Plaintiff argues Ms. Hornsby received a warning instead of termination in 2006 for stopping and detaining a customer she believed was stealing merchandise. (Doc. No. 58-1). Plaintiff asserts his termination was too severe compared to Ms. Hornsby, who was only given a warning for engaging in the same conduct. (Doc. No. 58). Defendant responds that Ms. Hornsby's conduct occurred more than eleven years before Plaintiff's misconduct, and while Ms. Hornsby stopped and detained a customer, Plaintiff left his register without notifying management and pursued a shoplifter out of the store. (Doc. No. 67 at 11). Defendant argues Plaintiff and Ms. Hornsby were not subjected to the same supervisors, same standards, and did not engage in the same conduct. (*Id.*). Defendant further argues that Ms. Hornsby was eventually terminated in 2016 for violating the RWD policy when she followed a shoplifter out of the store, into the parking lot, and over to the shoplifter's car. (Doc. No. 67 at 11; Bond Decl. ¶¶ 4-5, Doc. No. 28-7). In 2016, Ms. Hornsby engaged in similar conduct and was subjected to the same standards as Plaintiff, and like Plaintiff, Ms. Hornsby was immediately terminated. (Doc. No. 58-1).

Second, Ms. Stewart and Ms. Shields, former cashiers, were terminated in 2017 for abandoning their registers to follow a shoplifter. Plaintiff argues their situation is different from Plaintiff's situation because Ms. Shields and Ms. Stewart, along with the manager, provided written statements about the incident. (Doc. No. 58 at 3). Plaintiff further argues Ms. Stewart and Ms. Shields followed a shoplifter to her car and demanded her purse even though they did not see any merchandise, instead of apologizing and walking away from the customer in accordance with Lowes RWD Policy. (*Id.* at 8-9). Whereas, Plaintiff did not touch, grab, or tackle the shoplifter and only went outside to get a license plate number. (*Id.*). Defendant responds that Ms. Shields,

Ms. Stewart, and Plaintiff were terminated for identical conduct—abandoning their cash registers and following a suspected shoplifter outside of the store. (Doc. No. 67 at 12). Defendant argues it is not material how the customer is confronted or whether the merchandise is visible or not; instead, the material point is pursuing a shoplifter outside of the store into the parking lot, or in Plaintiff's case, an adjacent lot.

Finally,[15] Mr. Brand, who worked with Plaintiff and also went outside when the shoplifter ran away, was not terminated for his conduct. (Doc. No. 58 at 7). Defendant responds that Mr. Brand, who was not working on a cash register, is not an adequate comparator because Mr. Brand's conduct was not as serious as Plaintiff's or any of the other cashiers who were terminated. (Doc. No. 67 at 13). According to Mr. Brand's Deposition, Mr. Brand followed a co-worker outside the front door, halted just outside the door, and went no further until after he contacted a Loss Prevention manager. (*Id.*; Brand Depo. at 12-13, Doc. No. 62). Defendant argues Plaintiff admits Mr. Brand stated behind the "yellow line" just outside the front door and did not continue to follow the shoplifter. (Doc. No. 67 at 13). Unlike Plaintiff, when Mr. Brand realized the shoplifter was fleeing on foot, he called management before proceeding any further. (Brand Depo. at 15-19). Plaintiff continued to the lot across the street where customers had detained the shoplifter.

The record shows Plaintiff was treated no differently than similarly-situated employees. *See Hall v. Baptist Mem'l Health Care Corp.*, 27 F.Supp.2d 1029, 1038 (W.D. Tenn. 1998) (finding plaintiff did not show that the College "had ever treated an employee who assumed a leadership position in an organization expressing public support for homosexuals and the homosexual lifestyle any differently than it treated her"). Here, like Plaintiff, Ms. Shields and Ms.

---

[15] Plaintiff attempts to put forth other arguments that relate to the credibility of witnesses who say they saw Plaintiff run and yell after the shoplifter. (Doc. No. 58). The Court finds these arguments are not relevant to the similarly-situated analysis for the religious discrimination *prima facie* case.

Stewart abandoned their posts at the cash register to follow an alleged shoplifter without notifying a manager or a loss prevention manager. (Pl. Depo. at 169, 195; Bond Depo. at 72-73). Ms. Hornsby was also terminated as a Store Manager for not following the RWD policy when she followed a shoplifter. (Doc. No. 58-1). Plaintiff's comparison to Mr. Brand is also flawed because Mr. Brand was not similarly situated—he was not stationed at the register—and did not engage in the Plaintiff's same conduct. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992). Plaintiff followed the shoplifter outside the store to an adjacent lot without contacting Loss Prevention or a manager. (Pl. Depo. at 167-170, 174). Therefore, the Court finds Plaintiff fails to produce sufficient affirmative evidence to establish that the other employees with whom he compares his treatment were "similarly situated in all respects," or that their conduct was of "comparable seriousness" to the conduct for which he was discharged.

Accordingly, Plaintiff has not produced evidence to establish a *prima facie* case of discrimination on the basis of religion. Even assuming, however, that Plaintiff was able to satisfy his burden of establishing a prima facie case, Plaintiff has not produced evidence to show that Defendant's articulated, legitimate, non-discriminatory reason for terminating Plaintiff was a pretext for religious discrimination. Lowes terminated Plaintiff for failing to comply with the RWD Policy when he went after a shoplifter without informing management and left his cash register. Plaintiff points to no evidence in the record to show Defendant's reason for terminating

Plaintiff had no basis in fact[16], did not actually motivate the decision to terminate Plaintiff[17], or that the reason was insufficient to motivate the decision.[18] *Alazawi v. Swift Transp. Co., Inc.,* 391 F. Supp. 2d 626, 633 (W.D. Tenn. 2004). The Court therefore **GRANTS** Defendant's Motion for Summary Judgment as to the religious discrimination claim.

It is so **ORDERED**.

                                                  */s/ William L. Campbell, Jr.*
                                                  WILLIAM L. CAMPBELL, JR.
                                                  UNITED STATES DISTRICT JUDGE

---

[16] Plaintiff cannot present evidence that the proffered bases for Plaintiff's discharge was false, because Plaintiff left his cash register and followed a shoplifter to an adjacent lot without contacting a Loss Prevention Manager, which is a violation of Lowes policy. (Pl. Depo. at 169; Bond Depo. at 31-32; Brand Depo. at 10-11); *see also Marshall v. The Rawlings Co. Inc.*, 854 F.3d 368, 380 (6th Cir. 2017); *Jones v. Potter*, 488 F.3d 397 (6th Cir. 2007).

[17] Plaintiff does not proffer any circumstances which would tend to prove an illegal motivation was more likely the reason for Plaintiff's termination than the reason offered by the Defendant. The fact that Defendant asked Plaintiff to work on the Sabbath two years before his termination because the delivery department was short staffed, and Plaintiff's refusal, is not sufficient to show an illegal motivation. (Pl. Depo. at 57-58).

[18] As discussed previously, the employees that were "similarly situated" to Plaintiff were also terminated.